IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CA No.: 5:23-cv-00683

| | | |
|---|---|---|
| LEO J. EDWARDS, on behalf of himself and all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | **PLAINTIFF'S COLLECTIVE COMPLAINT** |
| CITY OF RALEIGH, | ) ) | |
| *Defendant.* | ) ) ) | |

COMES NOW, Leo J. Edwards ("Plaintiff"), on behalf of himself and all others similarly situated, (collectively "Named and Putative Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective action against Defendant City of Raleigh ("Defendant" or "The City") and alleges as follows:

## PRELIMINARY STATEMENT

1.	This action is brought individually and as a collective action for unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Defendant had a systemic company-wide policy, pattern, or practice of failing to pay employees for all hours worked, including, but not limited to, pre- and post-shift compensable work activities, unpaid overtime compensation, liquidated damages, and related penalties and damages.

2.	Plaintiffs consist of current and former police officers working for Defendant's Raleigh Police Department ("RPD"). In particular, throughout the relevant period, Defendant maintained a policy to bank the overtime hours worked by employees as straight compensation time ("Comp Time"). Essentially, rather than banking such hours at time and one-half since they

reflected overtime hours worked, Defendant maintained a policy of not properly compensating employees at the appropriate overtime premium rates for all hours worked, including compensating Plaintiffs for mandatory pre-shift and post-shift work, trainings, and court appearances.

3. Defendant's pay practices and policies were in direct violation of the FLSA. Accordingly, Named and Putative Plaintiffs seek unpaid overtime compensation, in addition to, liquidated damages, attorneys' fees and costs, and other damages permitted by applicable law.

4. Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant Raleigh police stations who worked, work, or will work in the position of Police Officer or other similarly situated non-exempt positions, who were subjected to Defendant's "Comp Time" policy and were not compensated for all hours worked above forty (40) per week, any time within three years prior to the commencement of this action, through the present.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*

6. The United States District Court for the Eastern District of North Carolina has personal jurisdiction over Defendant as it is a local government entity that conducts business in Wake County, North Carolina, which is located within this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant is a local government entity that conducts business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

## PARTIES

8.    Plaintiff Edwards is an adult resident of the State of North Carolina, residing in Sanford, North Carolina. At all times relevant, Plaintiff Edwards was employed by Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1)(C).

9.    Plaintiff Edwards worked for Defendant's RPD as a non-exempt hourly paid police academy cadet from approximately January 13, 2020, through September 25, 2020.  Upon his successful completion of the Raleigh Police Academy in September 2020, Plaintiff Edwards became a police officer, a position he maintained through his date of termination, December 16, 2022.

10.    Defendant is a local governmental entity with a principal location of 222 W. Hargett St., Raleigh, NC 27601.

11.    Defendant is the primary law enforcement agency in the City of Raleigh, North Carolina, and is comprised of police officers and various administrative personnel. Upon information and belief, it employs approximately four thousand (4,000) full-time employees, with approximately eight hundred (800) employees in the Raleigh Police Department ("RPD").

12.    Upon information and belief, during the time period relevant to this action, Defendant was an employer, joint employers, or members of an integrated, common enterprise, that employed Plaintiff, pursuant to the FLSA, in that Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiff and dictate the compensation of Plaintiff, and Defendant received the benefit of Plaintiff's labor.

13.    Plaintiff brings this action on his own behalf and, pursuant to 29 U.S.C. § 216(b), as representative of a proposed collective action of similarly situated employees.

**COVERAGE**

14.     At all times material to this action, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named and putative Plaintiffs.

15.     At all times material to this action, Defendant was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

16.     At all times material to this action, Named and putative Plaintiffs were individual employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

17.     At all times material to this action, Defendant was a public agency, as defined by the FLSA, 29 U.S.C. § 203(x), and has been an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(r), 203(s), since Defendant acts as a public agency, and such activities "shall be deemed to be activities performed for a business purpose" under § 203(r)(2)(C).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

18.     Defendant is responsible for providing policing and law enforcement services throughout Raleigh, North Carolina.

19.     Defendant employs police officers, who are empowered by State or local ordinance to enforce laws designed to maintain peace and order, protect life and property, and to prevent and detect crimes; who have the power to arrest; and who have undergone training in law enforcement.

20.     Throughout his employment with Defendant, since January 2020, Plaintiff Edwards began work for Defendant as a cadet in Defendant's RPD Police Academy ("Academy") and after successful completion of the Academy, he became a Police Officer at its Southwest District Station through the date of his termination, December 16, 2022.

21.     Throughout his employment with Defendant, Plaintiff Edwards received positive remarks on performance evaluations and advanced to the position of First Class Officer.

4

22.     Plaintiff Edwards' duties include, but are not limited to, (1) patrolling the community in an effort to be proactive with response to crime; (2) promptly responding to incidents; (3) carrying out arrests; (4) effectively communicating with the public in his capacity as an officer; (4) navigating Defendant computer systems and software programs; (5) providing community resources to local citizens; (6) investigating vehicular accidents; (7) crime scene management; (8) conducting vehicular stops; (9) domestic violence response; (10) investigating crimes; (11) drafting reports; (12) assisting with the prosecution of crimes by testifying as a witness in court; and (13) maintaining community safety.

23.     Plaintiffs are typically scheduled to work approximately eighty-six (86) hours every fourteen (14) days ("Pay Period").

24.     Specifically, Defendant requires Plaintiffs to work rotating schedules of five (5) days on and two (2) days off, with shifts of twelve (12) hours for each scheduled day. For example, for two (2) weeks per month, Defendant scheduled Plaintiffs to work Monday, Tuesday, Friday, Saturday, and Sunday one week, and then Wednesday and Thursday the following week. During the second two weeks, the days and hours scheduled would be the inverse.

## WAGE RELATED FACTUAL ALLEGATIONS

25.     Upon information and belief, Defendant's Raleigh Police Department employs approximately 800 police officers in its six (6) district stations.

26.     Defendant compensates police officers on an hourly basis. Defendant classifies these employees as hourly non-exempt under the FLSA.

27.     During the relevant time period, to satisfactorily perform their duties required, police officers were required to perform work-related duties beyond their scheduled shift times, including before their shift start time, after their shift end time, and mandatory attendance in court

and trainings on unscheduled days off.

**Pre-Shift Activities**

28.     During the relevant period, police officers' shifts began upon logging into a system on their patrol cars. However, as part of their duties, police officers were required to arrive prior to the start of their shift, and prior to their hours worked being recorded, to prepare for their work duties.

29.     Specifically, police officers were required to arrive prior to the start of their scheduled shift to prepare and inspect the officers' patrol cars, prepare service equipment, to log in to Defendant's various systems to ensure a successful patrol, and ensure body and dash cameras were properly working.

30.     Plaintiff Edwards' twelve (12) hour shift was scheduled to begin at approximately 6:00 am. However, he typically arrived ten (10) to twenty (20) minutes prior to the start of his shift so he could prepare his service equipment and prepare and inspect his patrol car. Plaintiff Edwards was required to complete these activities as part of his work duties, but was not credited for working this time because it was not recorded on Defendant's system. Thus, considering Plaintiff Edwards' average of fifteen (15) unpaid minutes each shift for compensable activities, Plaintiff Edwards is owed approximately $57.09 for each two-week pay period or $28.54 per week.

**Post-Shift Activities**

31.     At the end of a twelve (12) hour shift, police officers frequently stayed past the end of their scheduled shift in order to finish a call, turn in equipment, finish reports, book evidence, take charges out on a suspect, have warrants signed by a Wake County Magistrate via videolink or in person at the Wake County Detention Center, and transport suspects to jail.

32.     These required post-shift duties could take anywhere from ten (10) minutes to over

one and a half (1 ½) hours, for an average of approximately forty-five (45) minutes at the end of each shift, approximately 2.7 hours per week, or approximately 5.83 hours per pay period.

33.     Although this time worked past the end of a scheduled shift was recorded on Defendant's system, it was not counted as overtime, but instead, banked as "comp time." Defendant had a practice and policy of awarding "comp time" as straight time, rather than at time and a half, as required by the FLSA. Thus, for example, for a two-week pay period, Plaintiffs are awarded only 5.83 hours (i.e., straight time) of "comp time," rather than the 8.75 hours (i.e., time and a half) that they are rightfully entitled to.

**Forced "Comp Time"**

34.     Where an employee has expressly agreed to accept compensatory time in lieu of cash payments, municipalities, such as Defendant, may elect to pay compensatory time at one and a half credit rather than cash overtime payments, in accordance with 29 C.F.R. § 553.23.

35.     Defendant, however, has routinely required police officers to accept "comp time" rather than cash overtime compensation, despite the lack of an express agreement, when police officers work on-the-clock overtime. There exists little meaningful opportunity for a police officer to successfully request overtime to be paid as a cash payment rather than compensatory time credit.

36.     Instead, it is Defendant's policy and practice to only offer cash overtime payments when banked "comp time" exceeds seventy (70) hours.

37.     When crediting "comp time" to police officers, Defendant issues it as straight time, rather than time and a half, as required by the regulations.

38.     Moreover, when a police officer's "comp time bank" comes close to seventy (70) hours, the police officer is required, by Defendant, to take time off, generally, the next shift, to avoid triggering Defendant's automatic overtime payout. Thus, instead of taking "comp time"

earned at their own discretion, police officers are forced to utilize it at Defendant's request when it nears seventy (70) hours.

**Court Appearances -- During Scheduled Days Off**

39.     As part of their mandated work duties, police officers often appear in court to testify in matters they investigated.

40.     These required court appearances often take place outside of their scheduled shifts.

41.     When police officers testify in Wake County court proceedings, they sign a paper time-tracking sheet at the Wake County Courthouse.

42.     While these hours were recorded, they were not properly compensated as overtime, but again, banked as "comp time."

43.     Specifically, Plaintiff Edwards, for example, was required to attend court for 8.25 hours during the Pay Period from October 22, 2021, through November 5, 2021, in addition to his regularly scheduled eighty-four (84) hours of work for the two (2) week pay period. His pay stubs reflect that these 8.25 hours were paid out at a rate of $20.54, which was equal to his regular hourly rate at the time, instead of the overtime premium rate, which would have been $30.81 per hour. Thus, in this two-week pay period alone, Plaintiff Edwards is owed approximately $84.73 in unpaid overtime wages.

44.     Additionally, Plaintiff Edwards spent twenty (20) hours on a federal case during the pay period from March 26, 2022, through April 8, 2022, in addition to his regularly scheduled hours. When referencing his pay stubs for the same period, there is no account of the additional twenty (20) hours worked in federal court; rather, records reflect that he only worked 84 hours. Thus, for this pay period alone, Plaintiff Edwards is owed approximately $647.10 when accounting for his wage of $21.57 at the time.

**Mandatory Training – During Scheduled Days Off**

45.     As part of required work duties, police officers were required to attend in-service trainings through Defendant's Raleigh Police Department.

46.     These mandatory trainings were scheduled on off-duty days. Upon arrival at the training site, police officers signed in on a separate attendance sheet then manually entered this time into Defendant's payroll system. However, Defendant failed to properly compensate these additional hours worked as overtime.

47.     By way of example, Plaintiff Edwards attended a mandatory four (4) hour In-Service Training on March 3, 2022, in addition to his five (5) regularly scheduled twelve (12) hour shifts that week, and his two (2) regularly scheduled twelve (12) hour shifts the week after, for approximately eighty-eight (88) hours during this two-week pay period. However, Plaintiff Edwards' corresponding pay stub only reflected a total of eighty-four (84) hours. Thus, for this pay period alone, Plaintiff Edwards is owed approximately $129.42 in unpaid overtime wages, considering his wage of $21.57 per hour at the time.

## FLSA COLLECTIVE ALLEGATIONS

48.     Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all similarly situated employees.

49.     Members of the FLSA class are similarly situated.

50.     Members of the FLSA class have substantially similar job requirements and pay provisions, and are subject to common practices, policies, or plans that fail to compensate them for all work performed and fail to compensate them at the appropriate overtime rate for all hours worked in excess of forty (40) per week.

51.     There are numerous (in excess of 200) similarly situated current and former

individuals that fall within the scope of the aforementioned FLSA class.

52. These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

53. Members of the proposed FLSA class, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

54. Plaintiff consents in writing to assert his claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is filed with the Court as Exhibit A to this Complaint. As this case proceeds, it is likely that other individuals will file consent forms and join as opt-in plaintiffs.

55. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

56. As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs to pursue their claims in this matter.

57. Named Plaintiff requests that he be permitted to serve as a representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## COUNT ONE
### Violation of the Fair Labor Standards Act
### 29 U.S.C. § 207
### Brought by Plaintiffs on Behalf of Themselves and All Similarly Situated Employees

58. Plaintiff Edwards incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

59. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

60.     The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The FLSA defines "employ" broadly, to cover anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. § 203(g).

61.     At all relevant times, Defendant has employed, and continues to employ, "employee[s]," including Named Plaintiff, and each of the members of the prospective FLSA Class, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

62.     The FLSA, pursuant to §§ 206 and 207, requires each covered employer, including Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

63.     Defendant's failure to pay Plaintiffs for all hours worked , and at the overtime rate for hours worked in excess of forty (40) per week, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since Defendant cannot show it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since Defendant's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

64.     As a result of Defendant's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked, and appropriate compensation for all overtime hours worked, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

65.     Plaintiffs and putative Plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1.     Issue an Order certifying this action as a collective action under the FLSA, and designated Plaintiff Edwards as a representative of all those similarly situated under the FLSA collective action;

2.     Award Plaintiff Edwards and all those similarly situated actual damages for all unpaid wages found due to Plaintiff and all those similarly situated, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b);

3.     Award Plaintiff Edwards and all those similarly situated post-judgment interest at the statutory rate, pursuant to the FLSA, 29 U.S.C. § 216(b) and consistent with 28 U.S.C. § 1961;

4.     Award Plaintiff Edwards and all those similarly situated attorneys' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b); and

8.     Award Plaintiff Edwards and all those similarly situated further legal equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, November 29, 2023.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)

Amanda M. Whitt-Downs (NCSB No. 60452)
Hannah B. Simmons (NCSB No. 59579)
Matthew M. Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
awhitt_downs@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiff*