IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-683-FL

| | | |
|---|---|---|
| LEO J. EDWARDS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| CITY OF RALEIGH, | ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on plaintiff's motion to conditionally certify this case as a collective action and to authorize issuance of notice (DE 17), defendant's partial motion to dismiss for failure to state a claim (DE 23), and plaintiff's motion to strike exhibits (DE 26). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, plaintiff's motion for conditional certification is granted in part and held in abeyance in part, and the remaining motions are granted in part and denied in part as set forth herein.

## STATEMENT OF THE CASE

Plaintiff, a former employee of defendant's police department, commenced this action on November 29, 2023, and filed the operative first amended complaint on March 27, 2024, asserting claims for violations of the overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), on behalf of himself and a collective of defendant's current and former employees. Plaintiff alleges that defendant failed to pay him and other employees the required wages, including at the overtime premium rate. Plaintiff seeks unpaid compensation, gap time

compensation, wages for uncompensated work, certification of a FLSA collective action, liquidated damages, prejudgment interest, and attorneys' fees and costs.[1]

Shortly after amending his complaint, plaintiff filed the instant motion to certify conditionally a FLSA collective defined as:

> [a]ll individual who were, are, or will be employed at [d]efendant Raleigh police stations who (1) worked in the position of [p]olice [o]fficer, or other similarly situated non-exempt positions; (2) [ ] were subjected to [d]efendant's policy of being required to perform work off the clock, such as before the start of their shift; (3) were subjected to [d]efendant's Comp Time policy and were not compensated for all hours worked up to and in excess of eighty-five and a half (85.5) hours per fourteen (14) days, and/or [ ] were paid additional pay including but not limited to bonuses and worked overtime during any pay period for which additional pay, including, but not limited to bonuses was received any time within three years prior to the commencement of this action, through the present.

(DE 18 at 9), and for court authorization of notice to issue to potential collective members. Plaintiff seeks approval of a proposed notice, method for distribution of the same, and provision of contact information of proposed opt-in plaintiffs to aid in such distribution. In support of this motion, plaintiff relies on memorandum of law, declaration of plaintiff, and the aforementioned proposed notice and opt-in forms.

In opposition to plaintiff's motion to certify, defendant relies upon 43 exhibits, including 1) defendant's previous and current Operating Procedure 300-5 Overtime policies ("Overtime Policy"); 2) minutes records showing defendant's city council's adoption of past overtime policies and the current Overtime Policy; 3) records pertaining to plaintiff's pay periods, submitted timesheets, and other materials accessible to plaintiff during his employment with defendant; 4) Departmental Operating Instructions adopted by the Raleigh Police Department ("RPD"); 5) sample documents related to police officer roll call and work schedules; 6) training materials

---

[1] Plaintiff also asserts that his claims are governed by a three-year statute of limitations where defendant's acts constitute willful violations of the FLSA pursuant to 29 U.S.C. § 255.

presented to police officers; 7) records purportedly signed by plaintiff attesting to his receipt of certain forms; and 8) declarations of various officials, who are employed by defendant. Defendant argues there are no similarly situated employees with respect to plaintiff's claims that satisfies the conditional certification standard under 29 U.S.C. § 216(b).

Defendant also opposes the form of proposed notice to potential class members on grounds that it is insufficiently neutral and contains other deficiencies. Defendant further asserts that any release of contact information as to putative collective members would require entry of a protective order "that will safeguard the requested information[.]" (DE 22 at 20).[2]

Thereafter, defendant filed the instant partial motion to dismiss under Rule 12(b)(6), relying on 1) plaintiff's timesheets and pay stubs relating to various pay periods in dispute; 2) records relating to hours worked by plaintiff; 3) records relating to plaintiff's court attendance on October 29, 2021; and 4) declarations of various officials, who are employed by defendant. Defendant's motion is directed at plaintiff's claims for overtime and gap time compensation, as well as claims pertaining to plaintiff's bonus payments, defendant's compensatory leave practices, and mandatory court and training appearances.

Following filing of its motion, defendant answered plaintiff's operative first amended complaint. Thereafter, plaintiff responded in opposition to defendant's motion and filed the instant motion to strike the exhibits relied upon by defendant in defendant's opposition to plaintiff's motion to certify and defendant's memorandum in support of defendant's partial motion to dismiss.

---

[2]     Between filing of plaintiff's motion to certify conditionally a FLSA collective and defendant's response in opposition, the court granted defendant's unopposed motion to stay discovery, including the filing of a discovery plan, until the court issues an order addressing plaintiff's motion for conditional certification. (See DE 21).

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint[3] may be summarized as follows. Plaintiff and the other employees consist of current and former police officers ("police officers") working for the RPD, defendant's primary law enforcement agency. (Compl. ¶¶ 1, 14). "Defendant is responsible for providing policing and law enforcement services throughout Raleigh, North Carolina." (Id. ¶ 21). Plaintiff, a resident of Sanford, North Carolina, was employed by the RPD between approximately January 13, 2020, and December 16, 2022. (Id. ¶¶ 11, 12, 27).

Plaintiff alleges that defendant compensates RPD police officers on an hourly basis, "as hourly non-exempt under the FLSA." (Id. ¶ 25). As a police academy cadet from approximately January 13, 2020, through September 25, 2020, plaintiff was paid at a rate of approximately $18.80 per hour. (Id. ¶¶ 12, 29). In September 2020, following his training as a cadet, plaintiff became a police officer and his pay rate increased to approximately $19.37 per hour. (Id. ¶ 30). Plaintiff's pay increased to approximately $19.76 per hour in January 2021. (Id. ¶ 31). "Around September 2021, [plaintiff's] pay rate increased again to approximately $20.55 [per hour]." (Id. ¶ 32). Plaintiff's pay increased to approximately $21.57 per hour in March 2022, and then increased again later in 2022 to approximately $22.00 per hour until plaintiff's termination date on December 16, 2022. (Id. ¶¶ 12, 33–34). As a police officer, plaintiff's duties included "(1) patrolling the community in an effort to be proactive in response to crime; (2) promptly responding to incidents; (3) carrying out arrests; (4) effectively communicating with the public . . .; (5) navigating [d]efendant's computer systems and software programs; (6) investigating vehicular accidents; (7) crime scene management; (8) conducting vehicular stops; (9) [responding to] domestic violence

---

[3]     Hereinafter, all references to the complaint in the text, or "compl." in citations, are to the operative first amended complaint (DE 16), unless otherwise specified.

[incidents]; (10) investigating crimes; (11) drafting reports; (12) assisting with the prosecution of crimes by testifying as a witness in court; and (13) maintaining community safety." (Id. ¶ 35).

Plaintiff alleges that police officers employed by defendant "are typically scheduled to work approximately eighty-four (84) hours every fourteen (14) days." (Id. ¶ 36). Police officers are also compensated and required to submit timesheets containing their worked hours every 14 days. (Id. ¶ 40). Thus, according to the complaint, defendant's 14-day work period mandated "[d]efendant to compensate [RPD officers] time and one-half for any hours worked over eighty-five and one-half (85.5)" in that 14-day work period. (Id. ¶ 3). However, plaintiff alleges that "[d]efendant only calculated overtime hours every twenty-eight (28) days, resulting in a significant undercutting of [police officers'] overtime wages." (Id. ¶ 3).

Further, plaintiff alleges that police officers were not permitted to record time worked prior to the start of their shift, even where before their shifts, "[police officers] were required to prepare and inspect . . . patrol cars, prepare service equipment, log in to [d]efendant's various systems to ensure a successful patrol, and ensure body and dash cameras were properly working." (Id. ¶¶ 42–43). "If [police officers] attempted to record such time, [they] would get into trouble with [d]efendant." (Id. ¶ 43). Plaintiff alleges that "[o]n average, [police officers] were required to arrive between approximately ten (10) to twenty (20) minutes prior to the start of their shift to complete such activities." (Id. ¶ 44). Thus, plaintiff alleges that he is owed approximately an extra $67.80 per 14-day pay period, "based on [plaintiff's] starting hourly rate as a police officer of approximately $19.37, and applicable overtime premium rate of approximately $29.06." (Id. ¶ 45).

Additionally, plaintiff alleges that "police officers frequently stayed past the end of their scheduled shift in order to finish a call, turn in equipment, finish reports, book evidence, take

charges out on a suspect, have warrants signed by a [magistrate] . . . , and transport suspects to jail." (Id. ¶ 46). Plaintiff asserts an average of 45 minutes spent at the end of each shift, "or approximately 5.83 hours per pay period." (Id. ¶ 47). "Although this time worked past the end of a scheduled shift was recorded on [d]efendant's system, [police officers] have no way of verifying [that they] were paid for such hours through compensatory time at the appropriate overtime premium rate." (Id. ¶ 48). Further, plaintiff alleges that this "post-shift work was not counted as overtime, but instead, was allegedly banked as comp time." (Id. ¶ 49). This practice effectively "forced [police officers] to utilize [comp time] at [d]efendant's request" rather than "at their own discretion" because "when a police officer's comp time bank comes close to seventy (70) hours, the police officer is required, by [d]efendant, to take time off . . . to avoid triggering [d]efendant's automatic overtime payout." (Id. ¶ 51).

Plaintiff also alleges that police officers were often required to make "court appearances . . . outside of their scheduled shifts." (Id. ¶ 53). "While these hours were recorded, they were not properly compensated as overtime, but again, banked as comp time." (Id. ¶ 55). Plaintiff, for example, "was required to attend court for 8.25 hours during the [p]ay [p]eriod from October 22, 2021, through November 5, 2021, in addition to his regularly scheduled eighty-four (84) hours of work for the fourteen (14) day pay period." (Id. ¶ 56). However, "[h]is pay stubs reflect that these 8.25 hours were paid out at a rate of $20.54, which was equal to his regular hourly rate at the time, instead of the overtime premium rate, which would have been $30.81 per hour." (Id.). Thus, plaintiff alleges that he "is owed approximately $84.73 in unpaid overtime wages" from "this two-week pay period alone." (Id.).[4]

---

[4]    Plaintiff alleges another example of unpaid wages where he was required to spend twenty hours on a federal case in addition to his regularly scheduled hours. (Id. ¶ 57). However, plaintiff alleges that "[w]hen referencing his pay stubs for the same period, there is no account of the additional twenty (20) hours worked in federal court." (Id.). Thus, plaintiff asserts he is entitled to approximately $647.10 from that period. (See id.).

6

Additionally, plaintiff alleges that "police officers were required to attend in-service training sessions . . . scheduled on off-duty days." (Id. ¶¶ 58–59). As an example, plaintiff asserts that he attended a mandatory four-hour training session on March 3, 2022. (Id. ¶ 60). However, plaintiff's pay stub for that period did not include the additional four-hour training session. (Id.). Thus, plaintiff asserts that he "is owed approximately $129.42 in unpaid overtime wages" from this two-week pay period. (Id.).

"[P]olice officers [also] received additional pay or non-discretionary bonuses . . . such as for receiving vaccinations." (Id. ¶ 61). "However, [d]efendant failed to take into account such nondiscretionary bonus[es] when calculating police officers' regular rate of pay[.]" (Id. ¶ 62). Thus, plaintiff alleges that "[police officers] did not receive the appropriate premium overtime rate(s) because [d]efendant did not incorporate all bonus earnings, in determining the appropriate regular rate for overtime compensation when [police officers] worked in excess of eighty-five and a half (85.5) hours per fourteen (14) day period[.]" (Id. ¶ 5).

In sum, plaintiff alleges that the failure to compensate police officers for time worked during pre-shift and post-shift hours, as well as mandatory trainings and court appearances on days off, led to plaintiff, and leads to those similarly situated, not being paid for all hours worked and not being paid time-and-a-half for overtime. Plaintiff alleges that "[d]efendant maintained a policy of not properly compensating employees at the appropriate overtime premium rates for all hours worked in excess of eighty-five and one-half (85.5) in [a] fourteen (14) day work period[.]" (Id. ¶ 4). Plaintiff claims that his experience with defendant is representative of that of the putative FLSA collective class.

Additional alleged facts pertinent to the instant motions will be discussed in the analysis below.

7

## COURT'S DISCUSSION

A.     Plaintiff's Motion to Strike (DE 26)

Plaintiff moves to strike the 43 exhibits appended to defendant's response in opposition to plaintiff's motion for conditional certification and the six exhibits appended to defendant's partial motion to dismiss.  As part of his motion, plaintiff suggests the court should decline to consider the exhibits where they do "not qualify as the type of evidence that may be considered at the pleading stage, and because [d]efendant has failed to meet its burden that [they] should be subject to judicial notice[.]" (DE 27 at 16).[5]  The court agrees in that part seeking to have the court decline to consider the exhibits at this juncture, and otherwise disagrees to the extent the motion seeks to strike the exhibits.

A district court may, on motion of a party or on its own initiative, strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).[6]

By its plain terms, Rule 12(f) applies to "pleadings" such as a complaint or answer, not to exhibits included with a motion.  See Fed. R. Civ. P. 12(f); Fed. R. Civ. P. 7(a) (defining pleadings).  Plaintiff also has not demonstrated the exhibits are "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Accordingly, under the circumstances of this case, the court denies that part of the motion seeking to strike the exhibits.  However, where

---

[5]     Page numbers in citations to documents in the record specify the page number of the document designated by the court's case management / electronic case filing (CM/ECF) system, rather than the page number, if any shown on the face of the underlying document.

[6]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

plaintiff does not rely solely on Rule 12(f) in support of his motion, the court considers more particularly as follows plaintiff's request for the court to not consider the exhibits in addressing the motion to dismiss and motion to certify.

In reviewing a complaint under Rule 12(b)(6), the court may "consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Epcon Homestead, LLC v. Town of Chapel Hill, 62 F.4th 882, 885 (4th Cir. 2023); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (noting courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity"); Zak v. Chelsea Therapeutics Intern., Ltd., 780 F.3d 597, 606–07 (4th Cir. 2015) "[c]onsideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity.") (emphasis added).

Additionally, upon a Rule 12(b)(6) motion to dismiss, courts "may properly take judicial notice of matters of public record." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Whereas, under Federal Rule of Evidence 201, adjudicative facts are "simply the facts of the particular case," Goldfarb v. Mayor and City Council of Baltimore, 791 F.3d 500, 508 n.6 (4th Cir. 2015), "courts may consider relevant facts obtained from the public record, so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013). [7] Considering these standards, the court addresses the subject exhibits in turn as follows.

---

[7] For purposes of the instant analysis, the court applies the same standard to consideration of exhibits attached

9

1.    Defendant's Overtime Policy and Minutes Records

Considering first defendant's Overtime Policy and its precursors, (DE 22-1, DE 22-2, DE 22-3, DE 22-4, DE 22-5, DE 22-6), and the relevant city council minutes records, (DE 22-7, DE 22-8, DE 22-9, DE 22-10, DE 22-11, DE 22-12), defendant asserts that the court can properly take judicial notice of these exhibits as legislative facts. In particular, defendant asks the court to take judicial notice of the Overtime Policy "showing that [defendant] adopted a [28] day cycle for non-exempt sworn officers where they earned overtime after working 171 hours." (DE 30 at 8). The court declines to do so. Plaintiff vigorously contests consideration of the Overtime Policy at this stage of the litigation, and the court is "mindful that judicial notice must not be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters." Goldfarb, 791 F.3d at 511; see also Clatterbuck, 708 F.3d at 558 ("The narrow exception . . . does not, however, grant the district court carte blanche to label any information a legislative fact merely because it was garnered from the public record associated with the enactment of an ordinance.").

Additionally, for the reasons set forth herein, consideration of the Overtime Policy and the attendant city council exhibits is not determinative of the court's analysis of defendant's partial motion to dismiss and plaintiff's motion for conditional certification. In taking judicial notice of legislative facts, courts must still construe them "in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint." Clatterbuck, 708 F.3d at 557. And "whether information is the proper subject of judicial notice depends on the use to which it is put." Id. at 558. Thus, even where the court would take judicial notice of the fact that defendant's city council

_____

to defendant's response in opposition to plaintiff's motion to certify, with further discussion of the standard for certification set forth herein.

adopted the Overtime Policy in 2008, for reasons discussed below, that fact would not defeat plaintiff's allegation that "[d]efendant maintained a policy of not properly compensating employees at the appropriate premium rates for all hours worked in excess of [85.5] in that [14] day work period." (Compl. ¶ 4). Indeed, defendant "does not ask the [c]ourt to determine whether it followed its policy or to take judicial notice of facts for the matter asserted." (DE 30 at 8).

For similar reasons, the court declines to take judicial notice of the Overtime Policy and related documents as adjudicative facts. "Under Federal Rule of Evidence 201, courts at any stage of a proceeding may judicially notice a fact that is not subject to reasonable dispute, provided that the fact is generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Zak, 780 F.3d at 607. Defendant argues that the court should judicially notice these documents because declaration by defendant's Human Resources Director "provid[es] the personal knowledge and foundation required to attest that she is the custodian of [defendant's] personnel policies," and thus, the declaration "can be accurately and readily determined from sources who[se] accuracy cannot be reasonably questioned." (DE 30 at 7). However, that defendant's Human Resources Director attests to the veracity of the exhibits does not transform all of the subjected assertions into facts that are themselves subject to judicial notice. See Clatterbuck, 708 F.3d at 558. This goes beyond and is in addition to facts readily verified by reference to the underlying source, and is therefore not properly subject to judicial notice under Rule 201.

Lastly, defendant argues that the court may consider the Overtime Policy where plaintiff's complaint "questioned [defendant's] [O]vertime [P]olicy and incorporated some of its language." (DE 30 at 2). But plaintiff's complaint makes scant reference to the Overtime Policy. The complaint largely references defendant's policy of not properly compensating police officers in

11

the abstract. (See, e.g., compl. ¶ 1 ("Defendant had a systemic company-wide policy, pattern, or practice of failing to pay employees for all hours worked . . .")); (see also id. ¶ 4 ("Defendant maintained a policy of not properly compensating employees at the appropriate overtime premium rates . . .")). At a maximum, the complaint makes a singular reference to defendant's Overtime Policy where plaintiff sets forth his proposed definition of the FLSA collective pursuant to § 216(b). (See id. ¶ 7 ("All individuals who were, are, or will be employed at [d]efendant Raleigh police stations who . . . were subject to [d]efendant's Comp Time policy and were not compensated for all hours worked up to and in excess of [85.5] hours per [14] days.")). That lone assertion is insufficient to conclude that plaintiff "explicitly incorporated [the Overtime Policy] into the complaint by reference." Goines, 822 F.3d at 166.

Defendant cites to Gasner v. Cnty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995), for the proposition that "[c]ourts do not permit 'a plaintiff with a legally deficient claim to survive a motion to dismiss by simply failing to attach a dispositive document upon which it relied.'" (DE 30 at 2). But the face of the complaint does not suggest that plaintiff relied on the Overtime Policy. Indeed, the complaint only makes a singular reference to defendant's "Comp Time policy" and does not quote or cite to it. Defendant asserts that plaintiff paraphrases the Overtime Policy where the complaint alleges that "[d]efendant categorizes [p]laintiff's hours worked beyond [p]laintiff's schedule between 168 and 171 every [28] days as unscheduled hours worked." (DE 30 at 14). But that assertion, considered alongside plaintiff's one general reference to the Overtime Policy, is insufficient to conclude that plaintiff explicitly relied on the Overtime Policy in drafting his complaint. See Goines, 822 F.3d at 166 ("Although the complaint included a few quotes from and references to the Incident Report, [the plaintiff's] claims do not turn on, nor are they otherwise based on, statements contained in the Incident Report . . . Under these circumstances, the Incident

Report arguably is not integral to the complaint and therefore should not have been considered by the district court."); see also Sira v. Morton, 380 F.3d 57, 67 (2d. Cir. 2004) ("Limited quotation from or reference to documents that may constitute the relevant evidence in a case is not enough to incorporate these documents, wholesale, into the complaint."). Furthermore, that the complaint expressly disputes the length of the work period in the Overtime Policy further evidences that the Overtime Policy was not "explicitly relied on in the complaint." Phillips, 190 F.3d at 618.[8]

2. Defendant's Remaining Exhibits – Timesheets and Pay Stubs

As to the remaining exhibits, defendant asserts that the complaint references "plaintiff's pay stubs, timesheets and court sign-in sheets, making them integral to [p]laintiff's claims." (DE 30 at 4). The court disagrees.

In its response in opposition to plaintiff's motion for conditional certification, (DE 22), defendant includes as exhibits 1) declarations by defendant's officials, (DE 22-13, DE 22-20, DE 22-32, DE 22-35, DE 22-39, DE 22-41); 2) plaintiff's timesheets for the pay periods starting on September 11, 2021, September 25, 2021, February 26, 2022, and March 12, 2022, (DE 22-14); 3) defendant's internal time calculator for some of those periods, (DE 22-15); 4) plaintiff's pay stubs for those periods, (DE 22-16, DE 22-17); 5) a screenshot purporting to show wage and compensatory time information to which plaintiff had access, (DE 22-18); 6) a FAQ sheet allegedly disseminated to police officers, (DE 22-19); 7) Departmental Operating Instructions adopted by the RPD between 2013 and 2023, (DE 22-21, DE 22-22, DE 22-23, DE 22-24, DE 22-

---

[8]    The court also notes plaintiff's argument that "[d]efendant runs afoul of the [c]ourt [o]rdered stay of discovery," (DE 21), granted after defendant moved to stay a scheduling order and the time to submit a discovery plan.  (DE 20). Therein, defendant moved "to stay discovery until after adjudication of [p]laintiff's pending motion to conditionally certify a collective action and for a court-authorized notice to be issued" under § 216(b) of the FLSA. (Id. at 1).  While the court does not address plaintiff's argument on the merits, it acknowledges that plaintiff has not had the opportunity to depose witnesses or review all of defendant's documents attached as exhibits.  See Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985) ("Because Gay was not afforded an opportunity for reasonable discovery, the district court's treatment of the motion to dismiss as a motion for summary judgment was an abuse of discretion.").

25, DE 22-26, DE 22-27, DE 22-28, DE 22-29, DE 22-30, DE 22-31); 8) a sample redacted roll

call form, (DE 22-33); 9) the RPD's work schedule from December 2019 through January 2023,

(DE 22-34, DE 22-40); 10) materials used to train RPD employees on timesheet submission,

compensation, and other payrolls matters, (DE 22-36, DE 22-37, DE 22-38); and 11) forms

purportedly signed by plaintiff acknowledging receipt of the RPD's policy manual and attendance

at RPD trainings, (DE 22-42, DE 22-43).

Further, appended to the partial motion to dismiss, (DE 24), defendant includes as exhibits

1) declarations by defendant's officials, (DE 22-1, DE 22-5); 2) plaintiff's timesheets for the pay

periods beginning on October 9, 2021, October 23, 2021, January 1, 2022, and January 15, 2022,

(DE 24-2); 3) plaintiff's pay stubs for those same periods, (DE 24-3); 4) a spreadsheet allegedly

displaying comments that plaintiff made between September 19, 2020 and June 22, 2022, (DE 24-

4); and 5) plaintiff's court attendance record for October 29, 2021.

The court also declines to consider these exhibits at this stage in the litigation. The majority

of the exhibits are not arguably "integral to the complaint." Secretary of State for Defence v.

Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Further, plaintiff raises authenticity

objections as to the exhibits. (DE 32 at 14). As to plaintiff's timesheets, pay stubs, and court sign-

in records, while plaintiff mentions periods of work that coincide with the proffered exhibits,

plaintiff does so as examples to bolster the extant factual allegations in his complaint. (See, e.g.,

compl. ¶ 56 ("Plaintiff . . . for example, was required to attend court . . .")); (see also id. ¶ 60 ("By

way of example, [p]laintiff . . . attended a mandatory . . . [t]raining on March 3, 2022 . . ."). Thus,

these documents are not integral to the complaint nor were they "explicitly relied on in the

complaint." Zak, 780 F.3d at 607. Defendant will have the opportunity to present these exhibits

at a later juncture.

14

In sum, plaintiff's motion to strike is denied in that part where it seeks to have the court strike defendant's exhibits from the record, and granted in that part where it seeks to have the court not consider defendant's exhibits in ruling on defendant's partial motion to dismiss and plaintiff's motion for conditional certification.[9]

**B.   Defendant's Partial Motion to Dismiss (DE 23)**

**1.   Standard of Review**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

**2.   Analysis**

Plaintiff asserts claims for violations of the FLSA overtime provision, 29 U.S.C. § 207. The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207

---

[9]      Plaintiff also posits evidentiary arguments as a basis to grant his motion to strike defendant's exhibits from the record. Some courts have concluded that motions to strike are properly directed towards "evidence submitted in support of motions or pleadings." See, e.g., Morris v. Precoat Metals, No. 2:22-cv-0053-SLB, 2013 WL 830868, at *2 (N.D. Ala. Mar. 4, 2013). "Under this view, motions to strike evidence may be granted where the evidence that is offered is inadmissible under the Federal Rules of Evidence." Id. But where the court agrees with plaintiff's arguments as to declining consideration of defendant's exhibits under the Rule 12 pleading standard, the court finds it unnecessary at this time to resolve plaintiff's evidentiary challenges. Furthermore, for similar reasons, the court does not address plaintiff's allegation that defendant's submission of exhibits is "a backdoor attempt to persuade this [c]ourt to utilize the intermediate standard under the FLSA's conditional certification step." (DE 27 at 11.) Defendant does not challenge the certification standard. (See DE 30 at 13).

15

of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Section 207 prohibits employment for "a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a); see also Salinas v. Com. Interiors, Inc., 848 F.3d 125, 133 (4th Cir. 2017) (quoting 29 U.S.C. § 207(a)(1)) ("[T]he FLSA establishes a federal minimum wage and requires employers to pay 'a rate not less than one and one-half times the regular rate' to employees who work more than forty hours in a single workweek.").

"Recognizing the unique nature of the work performed by police officers and firefighters, Congress provided a partial exemption to the FLSA's overtime requirements for public agency employers." Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1267 (4th Cir. 1996). In particular, § 207(k) provides the following exemption:

> No public agency shall be deemed to have violated [§ 207(a)] with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities . . . if—
>
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days . . .; or
>
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
>
> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

16

29 U.S.C. § 207(k) (hereinafter, the "§ 207(k) exemption"). By regulation, the period of 216 hours stated in § 207(k) has been replaced by "171 hours for law enforcement employees." 29 C.F.R. § 553.201; id. § 553.230. Accordingly, "a public employer need not . . . compensate law enforcement employees at the overtime rate until they have worked a total of 171 hours for 28 consecutive days." Roy v. Cnty. of Lexington, South Carolina, 141 F.3d 533, 538–39 (4th Cir. 1998). "The number of hours at the regular and overtime wage rates for periods of fewer than 28 days would be calculated applying the same proportion, as explained in 29 C.F.R. § 553.230." Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1150 (10th Cir. 1992); see also Calvao v. Town of Framingham, 599 F.3d 10, 13 (1st Cir. 2010) ("[T]he partial exemption in § 207(k) set a higher threshold of hours that public safety personnel can work in a [28] day work period – or a proportional number of hours in a shorter work period of at least seven days – before these employees become entitled to overtime compensation.").

Defendant's partial motion to dismiss is directed at plaintiff's FLSA claims for overtime and gap time compensation, as well as claims pertaining to plaintiff's bonus payments, defendant's compensatory leave practices, and mandatory court and training appearances.[10] The court addresses these challenged claims in turn below.

a.    Overtime and Gap Time Compensation

Defendant argues that plaintiff's claim to overtime and gap time compensation based on a 14-day work period fails where defendant adopted a work period of 28 days pursuant to the § 207(k) exemption. Defendant suggests that establishment of a 28-day work period eliminates

---

[10]    Plaintiff additionally asserts an FLSA violation on the basis that he worked prior to the start and after the end of his scheduled shifts. (See Compl. ¶¶ 42-48, 83-84). Defendant does not challenge these claims in its motion to dismiss and it concedes that plaintiff has stated a FLSA claim for performing uncompensated pre-shift and post-shift work. (DE 31 at 6 n.5).

17

defendant's purported overtime and gap time compensation obligations under plaintiff's alleged facts. See O'Brien v. Town of Agawam, 350 F.3d 279, 290 (1st Cir. 2003) ("The longer the work period, the more likely it is that days of calm will offset the inevitable emergencies, resulting in decreased overtime liability."). The court disagrees.

The United States Court of Appeals for the Fourth Circuit has not addressed the types of allegations that will trigger application of a § 207(k) exemption. However, opinions from other circuit courts of appeal are instructive. "The [c]ity bears the burden of showing that it qualifies for a section [§ 207(k)] exemption." Adair v. City of Kirkland, 185 F.3d 1055, 1060 (9th Cir. 1999). "Whether an employer meets this burden is normally a question of fact." Flores v. City of San Gabriel, 824 F.3d 890, 903–04 (9th Cir. 2016); see also Singer v. City of Waco, Tex., 324 F.3d 813, 818 (5th Cir. 2003) ("This issue (whether the City established a 14-day or a 28-day work period) is a question of fact, and was properly submitted to the jury."); Birdwell v. City of Gadsden, Ala., 970 F.2d 802, 805 (11th Cir. 1992).[11]

"Generally, the employer must show that it established a § 207(k) work period and that the § 207(k) work period was 'regularly recurring.'" Flores, 824 F.3d at 904 (quoting 29 C.F.R. § 553.224(a)); see Lamon, 972 F.2d at 1154 ("To be adopted, the work period must have been put into effective operation by the City[.]"); see also Singer, 324 F.3d at 819 ("To be established by a city, the longer work period . . must have been put into effective operation by the city.").[12]

---

[11]     The circuit courts of appeal are divided as to the employer's burden of proof required to show that a § 207(k) work period has been established. Compare Lamon, 972 F.2d at 1154 (preponderance of the evidence), with Calvao, 599 F.3d at 15 (clear and affirmative evidence), and Birdwell, 970 F.2d at 805 (clear and affirmative evidence). In Singer, the Fifth Circuit did not specify the burden of proof on the employer, but it cited to Lamon and Spradling v. City of Tulsa, Okla., 95 F.3d 1492, 1505 (10th Cir. 1996). Nevertheless, Singer addressed the disputed length of the work period established under § 207(k), not merely whether an employer had established a § 207(k) regime in the first instance. The Fourth Circuit has not addressed this burden of proof split under § 207(k) and the court need not weigh in at the pleading stage.

[12]     At this stage, the court need not address differences, if any, between the substantive standards articulated in Flores, Lamon, and Singer.

18

Here, plaintiff states a FLSA claim for defendant's violation of the overtime and gap time provisions of the FLSA. Plaintiff allegedly was paid every 14 days, turned in a timesheet every 14 days, and worked on a rotating 14-day schedule. (Compl. ¶ 40). However, plaintiff alleges that defendant "only calculated overtime hours every [28] . . . days, resulting in a significant undercutting of [p]laintiffs' overtime wages." (Id. ¶ 3). While defendant agrees that plaintiff was paid overtime every 28 days where defendant purportedly adopted a 28-day work period, plaintiff specifically alleges that "[d]efendant adopted a fourteen (14) day work period." (Compl. ¶ 2; id. ¶ 80). Given this discrepancy, it is reasonable to infer, drawing all factual inferences in plaintiff's favor, that plaintiff did not receive the requisite overtime or gap time pay for all hours worked in the 14-day work period.

Defendant still urges the court to find, as a matter of law, that defendant established a 28-day work period under § 207(k). Defendant correctly states that "[a]s used in section [§ 207(k)], the term work period . . . cannot be less than 7 consecutive days nor more than 28 consecutive days . . . [but] the work period . . . need not coincide with the duty cycle or pay period[.]" 29 C.F.R. § 553.224(a). In Lamon, the plaintiffs renewed their motion for summary judgment or directed verdict arguing that the evidence presented at trial did "not show that the City established a bona fide work period under § 207(k), because . . . [d]espite the institution of a 28-day work period under Administrative Code No. 2–5, the City continued to pay its law enforcement personnel every two weeks and to pay overtime for hours worked in excess of 40 per week." 972 F.2d at 1151. The Tenth Circuit concluded that 29 C.F.R. § 553.224(a) "explicitly allows pay periods to vary from work periods and makes no mention of a requirement that overtime wage rates be paid only for hours exceeding 171 in a work period." Id. at 1152. Upon the plaintiffs' motions, the Tenth

Circuit held that "[t]he evidence was uncontroverted that the City adopted Administrative Code No. 2–5, setting forth the City's § 207(k) employment policy." Id.

Lamon may ultimately lend support to defendant's arguments. However, at this stage, the court cannot conclude that defendant established a 28-day work period where it must construe all well-pleaded factual allegations in plaintiff's favor. See Spradling v. City of Tulsa, Okla., 945 F.3d 1492, 1505 (10th Cir. 1996) (establishing a work period under § 207(k) "is normally a question of fact"). And plaintiff, without the benefit of the discovery process, has specifically alleged that defendant established a 14-day work period by asserting that plaintiff was paid every 14 days, submitted timesheets every 14 days, and worked on a 14-day schedule. Lamon does not command the court to resolve this disputed factual determination at the motion to dismiss stage. See 972 F.2d at 1153 ("The trial court correctly denied Plaintiffs' motion for directed verdict and renewed motion for summary judgment, as there was evidence upon which the jury could properly have found that the City had established [a] 28-day work period permissible under subsection (k).").

Even so, defendant asserts that plaintiff's allegations that plaintiff was paid and submitted timesheets every 14 days and worked a 14-day duty cycle are insufficient to state a claim for overtime where defendant is not required to align the work period and duty cycle or pay period under 29 C.F.R. § 553.224(a). The court disagrees. In Singer, the Fifth Circuit determined that "[t]he district court correctly told the jury that the City could establish a particular work period by demonstrating that it actually pays its fire fighting employees in accordance with the longer work period." 324 F.3d at 819. The court does not question that employers need not "structure pay periods to be co-extensive with the chosen work period." Lamon, 972 F.2d at 1151; but here, plaintiff alleges sufficient facts to plausibly infer that defendant had not "actually adopted a 28-

20

day work period" which was "put into effective operation" id. at 1154, or had not "established a §

207(k) work period" of 28-days and "the § 207(k) work period was regularly recurring." Flores,

824 F.3d at 904; cf. Franklin v. City of Kettering, Ohio, 246 F.3d 531 (6th Cir. 2001) (finding

defendant sufficiently demonstrated explicit adoption of a 28-day work period under § 207(k)

where defendant offered testimony and other evidence showing that officers were aware of the

work period).[13]

Furthermore, even if defendant could establish a policy of a 28-day work period, this would

not foreclose plaintiff's claims under the present allegations. In Singer, the Fifth Circuit found

that there was sufficient evidence for a jury to find that the plaintiff established a 14-day work

period even though, at trial, the defendant introduced a memorandum from the city fire chief

asserting that a "a 28 day-work cycle will be established." 324 F.3d at 820. The Singer court

concluded that the jury could properly find that the relevant work period was 14 days where the

city's finance director testified that the pay period was 14 days, the finance director understood

the work period to align with the pay period, and the city had always calculated overtime

compensation on a 14-day cycle. Id. The Fifth Circuit refused to disturb the jury's determination

where the plaintiff produced significant countervailing evidence despite the defendant's provision

of the fire chief's memorandum. Id. at 821; see also Adair, 185 F.3d at 1061 (emphasis added)

("The [defendant] established a [§ 207(k)] exemption when it specified the work period in the

[collective bargaining agreement] and when it actually followed this period in practice"). The

court's judicial notice of the Overtime Policy, therefore, would not conclusively show that

defendant followed the provisions of its Policy or preclude countervailing evidence that may

---

[13]     Notably, in its briefing, defendant does not cite to any case at the motion to dismiss stage where a court
concluded that a city established a contested work period in the face of the complaint's well-pleaded assertions to the
contrary.

emerge in the discovery process to support plaintiff's allegations. See Birdwell, 970 F.2d at 806 ("[T]he plaintiffs never had a chance to present evidence regarding the work period since the district court ruled that [§ 207(k)] did not apply while the plaintiffs were presenting their case. Thus, we cannot direct the district court to enter a judgment for the defendant without first giving the plaintiffs an opportunity to present evidence[.]")

In sum, plaintiff sufficiently alleges a claim for overtime and gap time compensation based on a 14-day work period. Thus, that part of defendant's motion to dismiss seeking to dismiss this claim is denied.

Defendant also asserts that plaintiff's claim for unpaid overtime compensation must be dismissed where plaintiff misstates the threshold overtime requirement under 29 C.F.R. § 553.230(c). Defendant is correct that where defendant has adopted a 14-day work period, defendant is obligated to pay the overtime premium rate only after plaintiff works 86 hours in that period. See id. While plaintiff's complaint alleges that the overtime threshold is triggered at 85.5 hours in a 14 day-work period, plaintiff agrees in his briefing that 86 hours is the correct maximum hour standard. Defendant does not cite to any legal authority requiring the court to dismiss all of plaintiff's overtime and gap time compensation claims under the FLSA on the basis of this misstatement. Furthermore, the factual allegations in plaintiff's complaint give rise to a plausible inference that plaintiff worked more than 86 hours during certain 14-day work periods without compensation at the overtime premium rate. See Hall v. DIRECTV, LLC, 846 F.3d 757, 777 (4th Cir. 2017) ("[T]o state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."); see also Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988) ("[P]laintiff under the FLSA need [] show the amount and extent of improperly

compensated work as a matter of just and reasonable inference").  Thus, the court will not dismiss plaintiff's claim for overtime and gap time compensation on the basis of this misstatement in plaintiff's complaint.

        b.    Bonuses

Next, the parties dispute whether defendant was required to include bonuses paid to plaintiff, including a bonus for receiving a vaccination on October 8, 2021, in his regular rate of pay under the FLSA.  Defendant asserts that the bonus paid to plaintiff for the October 8, 2021, vaccination was discretionary, and therefore, it did "not need to be included in [p]laintiff's regular rate of pay."  (DE 24 at 11).  Defendant also argues that plaintiff's allegation as to additional pay or nondiscretionary bonuses fails the requisite pleading standard.  (DE 31 at 5).  The court agrees.

"[T]he regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . [s]ums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency[.]"  29 C.F.R. § 779.18(e)(1).  Further, "[s]ums paid in recognition of services performed during a given period if . . . the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly" are not required to be included in the employee's regular rate.  Id. § 779.18(e)(3).

Here, plaintiff alleges that he "received a bonus for receiving a vaccine in the workweek ending on approximately October 8, 2021."  (Compl. ¶ 63).  Plaintiff alleges that the $250 bonus was "nondiscretionary" and "[d]espite receiving such a bonus, . . . [d]efendant did not

appropriately augment . . . [p]laintiff's regular rate of pay." (<u>Id.</u> ¶¶ 61, 63). Plaintiff also asserts that "police officers received additional pay or non-discretionary bonuses during their time working for [d]efendant, such as for receiving vaccinations." (<u>Id.</u> ¶ 61). But plaintiff is silent on other bonuses paid to plaintiff other than the October 8, 2021, bonus. And plaintiff fails to allege any facts that give rise to a reasonable inference that the October 2021 bonus or other bonuses were made by defendant "pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly," 29 C.F.R. § 779.18(e)(3), or "measured by or dependent on hours worked, production, or efficiency," <u>id.</u> § 779.18(e)(1). Further, plaintiff's complaint does not allege that any of his bonuses were paid "contingent upon [plaintiff] continuing in employment." <u>Id.</u> § 778.211. Nor does plaintiff allege, as to any of his bonuses, facts supporting the inference that defendant did not "retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus[es] were paid." <u>Id.</u>

In response, plaintiff asserts that "[w]hether a bonus was nondiscretionary or discretionary is a fact question that is inappropriate for resolution at the motion to dismiss stage." (DE 29 at 21). But plaintiff still fails to plead any facts supporting the inference that bonuses paid to him were nondiscretionary or required to be included in his regular rate of pay. Cf. <u>Bradescu v.</u> <u>Hillstone Rest. Grp., Inc.</u>, No. SACV 13-1289-GW (RZx), 2014 WL 5312546, at *4 (C.D. Cal. Sept. 18, 2024) (finding a factual dispute where the plaintiff alleged she received a bonus each time she trained a new server).

Accordingly, plaintiff's claim alleging a FLSA violation based upon defendant's failure to include bonuses in plaintiff's regular rate of pay is dismissed. Defendant's motion in this part thus is granted.

24

### c.    Compensatory Time Off Policy

The court next turns to plaintiff's allegation that defendant required plaintiff "to take off, generally, the next shift, to avoid triggering [d]efendant's automatic overtime payout" whenever his "comp time bank [came] close to seventy (70) hours." (Compl. ¶ 51). Plaintiff alleges this practice violates the FLSA where "instead of taking comp time earned at their own discretion, police officers are forced to utilize it at [d]efendant's request[.]" (Id.). Defendant admits that it requires employees to use their compensatory time as plaintiff alleges, but asserts that plaintiff's allegations fail as a matter of law under the FLSA. (See DE 24 at 12). The court agrees with defendant.

Plaintiff abandons his claim as to defendant's compensatory time off policy by not addressing defendant's arguments in his response brief. (See generally DE 29). In addition and in the alternative, plaintiff fails to plausibly allege a FLSA violation against defendant on this basis. "If compensation is paid to an employee for accrued compensatory time off, such compensation shall be paid at the regular rate earned by the employee at the time the employee receives such payment." 29 U.S.C. § 207(o)(5)(3)(B). Section 207(o)(5) "imposes a restriction upon an employer's efforts to prohibit the use of compensatory time when employees request to do so; [however, § 207(o)(5)] says nothing about restricting an employer's efforts to require employees to use compensatory time." Christensen v. Harris Cnty., 529 U.S. 576, 585 (2000) (emphasis omitted). "[U]nder the FLSA an employer is free to require an employee to take time off work, and an employer is also free to use the money it would have paid in wages to cash out accrued compensatory time." Id.

Accordingly, plaintiff's claim based upon requiring plaintiff to take compensatory leave upon approaching 70 hours of compensatory time is dismissed. Defendant's motion in this part thus is granted.

> ### d. Mandatory Court Attendance and Training Sessions

Turning to plaintiff's allegation that defendant failed to compensate plaintiff for time spent in court and training sessions, defendant argues that plaintiff's claim "lacks the factual sufficiency required for a claim under Rule 12(b)(6)." (DE 24 at 13). The court disagrees.

The Fourth Circuit addressed the pleading standards sufficient to state a claim under the FLSA, in the context of an overtime claim, in <u>Hall v. DIRECTV, LLC</u>, 846 F.3d 757 (4th Cir. 2017). In <u>Hall</u>, the Fourth Circuit pronounced:

> [T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay.
>
> At the same time, however, we emphasize that the standard we today adopt does not require plaintiffs to identify a particular week in which they worked uncompensated overtime hours . . . Thus, to state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week. A plaintiff may meet this initial standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, <u>or any other facts</u> that will permit the court to find plausibility.

<u>Id.</u> at 776–77 (emphasis in original).

Here, plaintiff alleges that police officers were required to attend "court and training sessions on unscheduled off days." (Compl. ¶ 26). According to the complaint, plaintiff was not properly compensated for these "mandated work duties." (<u>Id.</u> ¶ 52). As examples, plaintiff asserts

that he attended court for 8.25 hours during the pay period between October 22, 2021, and November 4, 2021, but was not compensated at the overtime premium rate despite working more than his scheduled hours for the 14-day pay period. (Id. ¶ 56). Additionally, plaintiff alleges that he spent 20 hours on a federal case during the pay period between March 26, 2022, and April 8, 2022, but plaintiff was not compensated for that work. (Id. ¶ 58). Plaintiff also alleges that he attended a mandatory four-hour training on March 3, 2022, in addition to his regularly scheduled hours. (Id. ¶ 60). However, plaintiff asserts he was not appropriately compensated for that training session either. (See id.). Specifically, plaintiff alleges that, for a particular period, defendant failed to adequately compensate him for all hours worked, including time police officers were required to attend court and training sessions. Plaintiff alleges sufficient facts to satisfy the pleading standards set forth in Hall.

In response, defendant proffers numerous exhibits, pertinent to the court appearance and training session examples, that purport to refute plaintiff's allegations that he was not adequately compensated. (See, e.g., DE 24 at 13–15). However, for reasons articulated above, the court declines to consider these exhibits at this stage. And it would be incongruous to dismiss plaintiff's detailed allegations for failure to satisfy the pleading standard where Hall expressly emphasized that plaintiffs need not "identify a particular week in which they worked uncompensated overtime hours." Hall, 846 F.3d at 777 (emphasis in original).

Accordingly, defendant's motion to dismiss that part of the complaint seeking adequate compensation for mandatory court appearances and training sessions is denied.

C.    Plaintiff's Motion to Certify (DE 17)

The statute governing FLSA collective actions, 29 U.S.C. § 216(b), provides, in pertinent

part:

> An action to recover the liability prescribed in the [FLSA] may be maintained
> against any employer . . .  in any Federal or State court of competent jurisdiction
> by any one or more employees for and in behalf of himself or themselves and other
> employees similarly situated. No employee shall be a party plaintiff to any such
> action unless he gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Accordingly, there are two requirements for maintenance of such an FLSA

action, also known as a "collective action": 1) the plaintiffs who are joined in the action must be

"similarly situated"; and 2) they must opt in by filing their consent to sue with the court.  Id.;

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).

Although the statute does not set forth a process for certifying the members of a collective

action, "[l]ower courts have borrowed class-action terminology to describe the process of joining

co-plaintiffs under 29 U.S.C. § 216(b)," despite the "significant differences between certification

under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b)."  Genesis

Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 n. 1 (2013).

Ordinarily, district courts have followed a two-stage process for certifying members of a

FLSA collective action.  First, at the notice stage, early in a case, the named plaintiffs may seek

"conditional certification" based upon a limited record, including approval of a notice to putative

collective action members of their right to opt in.  Id. at 70.  A final determination on certification

is made later, typically after discovery but before trial, when the court has available to it

substantially more information.  See, e.g., Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515

(2d Cir. 2020); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017).

28

The notice stage, subject of the instant certification motion, is grounded in the recognition by the United States Supreme Court, in Hoffmann-La Roche, that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. at 169. "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively," and "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." Id. at 170, 173.

"A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." Id. at 170. "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. (citing Fed. R. Civ. P. 83). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id.

The statute does not define the terms "similarly situated" for purposes of determining collective action membership. The Supreme Court and the Fourth Circuit also have not announced a test to determine whether individuals are "similarly situated." This court previously has used a test adopted originally from a FLSA treatise, whereby "plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc.,

338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Kearns, The Fair Labor Standards Act, § 18.IV.D.3); see, e.g., Vazquez-Aguilar v. Gasca, 477 F.Supp.3d 418, 422 (E.D.N.C. 2020) (same).

Several circuit courts of appeal recently have addressed comprehensively a standard for determining whether employees are "similarly situated" for purposes of an FLSA collective action. For example, the Second Circuit held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott, 954 F.3d at 516. "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. Likewise, the Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018); see also O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584-85 (6th Cir. 2009) ("[P]laintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.").

In this case, plaintiff has demonstrated for purposes of conditional certification that proposed opt-in plaintiffs are "similarly situated," under any of the foregoing definitions. The court first sets forth below its reasons for determining that putative plaintiffs are similarly situated, followed by discussion of plaintiff's proposed notice.

    a.    Similarly Situated

Proposed opt-in plaintiffs are similarly situated to named plaintiff for several reasons. First, they all performed similar duties as police officers employed by defendant. (See Edwards Decl. (DE 18-1) ¶ 3). Second, they all worked in positions where defendant allegedly failed to

30

adequately compensate them for similar pre-shift and post-shift work activities, as well as mandatory court attendance and training sessions. (See id. ¶¶ 4, 5, 9, 12, 16, 18, 20, 23, 26). Third, because all of these employees were allegedly subject to the same 14-day work period and other policies and practices of defendant, they raise similar core issues of fact and law material to the disposition of the FLSA claims. (See id. ¶¶ 40–43).

In response, defendant first argues that "[p]laintiff has failed to articulate even a modest showing of facts to show the [c]ity established a 14-day work period rather than a 28-day work period for any alleged similarly situated employees." (DE 22 at 7). The court disagrees, where it has previously determined that issues of fact preclude a determination that defendant established a 28-day work period as a matter of law. For one, defendant presumes a requirement different from that suggested by the authorities and case law set forth above. See, e.g., O'Brien, 575 F.3d at 584 ("Showing a 'unified policy' of violations is not required."). In any event, plaintiff identifies a common policy, scheme, or plan, in that hourly non-exempt police officers allegedly were subjected to a pay policy that resulted in "unpaid overtime wages for [any work] over [85.5] [hours] per [14] day pay period." (See Edwards Decl. ¶ 43).

Next, as to plaintiff's alleged uncompensated pre-shift and post-shift work, defendant argues that certification of similarly situated employees is inappropriate where "[p]laintiff fails to provide any facts, such as the names of these officers, the districts, squads and unit assignments of these officers, the names of any involved supervisors who were aware of the activities, or any details about how he became aware of officers' fears to record their hours worked." (DE 22 at 11). Effectively defendant requests the court to impose a standard greater than required for conditional certification. See Genesis Healthcare Corp., 569 U.S. at 70; Gasca, 477 F.Supp.3d at 422-425; see, e.g., Butler v. DirectSAT USA, LLC, 876 F.Supp.2d 560, 567 (D. Md. 2012) (noting

plaintiff's "evidence need not . . . enable the court to determine conclusively whether a class of similarly situated plaintiffs exists"). Further, there is no requirement as to the number of declarations or affidavits supporting a motion for conditional certification. See, e.g., Johnson v. PHP of NC, Inc., No. 5:23-cv-00462-M, 2024 WL 2290590, at *5 (E.D.N.C. May 21, 2024) ("In accordance with the purpose underlying the FLSA's collective action procedure, the initial inquiry into whether putative members are similarly situated proceeds under a fairly lenient standard and requires only minimal evidence."); Romero v. Mountaire Farms, Inc., 796 F.Supp.2d 700, 705 (E.D.N.C. 2011) ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."); Williams v. Long, 585 F.Supp.2d 679, 684 (D. Md. 2008) ("This would include factual evidence by affidavits or other means, but mere allegations in the complaint would not suffice.").

Defendant also cites to cases where courts denied plaintiffs' motions for conditional certification for failing to "show a 'reasonable basis' to claim there are other similarly situated employees." (DE 11 (quoting Yerger v. Liberty Mut. Grp., Inc., No. 5:11-cv-238-D, 2012 WL 4423499, at *4 (E.D.N.C. Sept. 24, 2012)). Those cases are distinguishable. In Yerger, the court concluded that the plaintiff failed to demonstrate she was similarly situated to any other field auditor after finding that the plaintiff possessed "atypical lack of discretion and independent judgment." Id. In Giron v. Square A Constr. Inc., the court denied conditional certification where the plaintiff, a commercial truck driver, did not proffer any evidence that other "drivers, mechanics, warehouse workers, repairmen, bricklayers, framers, and concrete masons" were subject to similar "job requirements or pay provisions." No. 3:20-cv-00626-DSC, 2021 WL 2481882, at *1, *2 (M.D.N.C. June 17, 2021). And in Ceras-Campo v. WF P'ship, while the court noted that the

plaintiff had failed to provide declarations from any of the putative opt-in plaintiffs, the court recognized that this deficiency was "not entirely dispositive" and still concluded that there were "other problems with [the] [p]laintiff's declaration itself." No. 5-10-cv-215-BO, 2011 WL 588417, at *3 (E.D.N.C. Feb. 9, 2011).

Here, plaintiff's declaration demonstrates that he and other police offers were required to complete a variety of tasks prior to the start of their scheduled shifts. (See, e.g., Edwards Decl. ¶ 16). Plaintiffs avers that he and other police officers "were frequently required to stay past the end of [their] scheduled shift to continue finishing tasks[.]" (Id. ¶ 18). Plaintiff further declares that he and other police offers were on average "required to attend at least one [court] proceeding per month . . . depending on [their] workload and the number of subpoenas [they] received." (Id. ¶ 26). And plaintiff establishes that "[f]rom personally speaking with, observing, and working alongside other officers, [he] know[s] that other officers for [d]efendant were subject to the same or similar policies and practices regarding job duties and scheduling of hours worked." (Id. ¶ 40); See McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 470 (E.D.N.C. 2010) ("[C]ourts have routinely recognized that where an employer has a common practice of failing to pay employees for all hours worked, factual distinctions of the type claimed by [defendant] provide no basis to deny initial certification of a collective action under the FLSA."). Thus, plaintiff's declaration makes a factual showing sufficient to satisfy the evidentiary standard at this initial certification stage.

In sum, plaintiff meets the collective action standard here by virtue of common legal issues arising from defendant's alleged failure to pay overtime as due, in the context of a limited universe of non-exempt police officers sharing the same RPD setting and working pursuant to the same alleged practices and policies. If, following the completion of discovery, defendant determines

33

that some opt-in plaintiffs operated pursuant to materially different procedures or factual circumstances, it may seek to sever the same individuals from the class through a motion for decertification. However, under the circumstances of this case, it would not promote efficiencies for either the court or litigants to require any putative collective action members to proceed in a separate action. Therefore, the court in its discretion grants plaintiff's motion for conditional certification.

      b.     Notice

As part of the instant motion, plaintiff seeks to have the court approve the "proposed FLSA notice of this action and the consent form." (DE 17 at 1). In addition, plaintiffs seek an order for production of names and other contact information for all putative class members and approval of a method for distribution of the notice. (Id.). While the court grants that part of plaintiff's motion for conditional certification, further proceedings are required to determine the appropriate notice to issue. Where the court dismisses some of plaintiff's FLSA claims based on inappropriately compensated bonuses and defendant's compensatory time off policy, the court directs plaintiff to supplement the motion with a revised request for court-authorized notice to be issued to collective action members. Further, the parties are directed to file motion(s) for protective order where defendant asserts that release of any contact information as to putative opt-in plaintiffs is protected under North Carolina law. (See DE 22 at 20).

Therefore, plaintiff's motion to certify is granted in that part seeking conditional certification and held in abeyance in that part seeking court authorization of notice.

## CONCLUSION

Based on the foregoing:

1.  Plaintiff's motion to strike (DE 26) is GRANTED IN PART and DENIED IN PART;

2.  Defendant's partial motion to dismiss (DE 23) also is GRANTED IN PART and DENIED IN PART. Plaintiff's claims based upon bonuses received and defendant's compensatory time off policy are DISMISSED under Rule 12(b)(6);

3.  As to the remaining claims, plaintiff's motion to certify and to authorize issuance of notice (DE 17) is GRANTED IN PART pertaining to certification and HELD IN ABEYANCE IN PART pertaining to notice;

4.  Plaintiff is DIRECTED to file, within 14 days of the date of this order, a supplement to his motion including a revised request for court-authorized notice to be issued to collective action members, in light of the court's determinations herein. Plaintiff's supplement shall specify if defendant consents to the form of notice; if not, defendant is DIRECTED to file, within 14 days thereof, a response; and

5.  The parties are DIRECTED to file motion(s) for protective order as set forth herein, within 14 days of the date of this order.

SO ORDERED, this the 11th day of September, 2024.

LOUISE W. FLANAGAN
United States District Judge

35